Case 2:12-mj-00319 Document 2 Filed 08/03/12 Page 1 of 5 PageID# 2

2:12MJ319

FILED
AUG - 3 2012
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR ISSUANCE OF ARREST WARRANTS

I, Brian R. Lewis, being duly sworn and deposed, state the following:

### INTRODUCTION

1. I am a Special Agent (S/A) for Homeland Security Investigations (HSI) within the United States Department of Homeland Security, and am currently investigating a drug trafficking organization (DTO) engaged in a conspiracy to import and distribute 3,4- Methylenedioxy-N-methcathinone (Methylone), a Schedule I Controlled Substance, into the United States, and to distribute and possess with intent to distribute Methylone in the Eastern District of Virginia, and elsewhere.

2. I make this affidavit in support of a criminal complaint and arrest warrant for: **Keith Allen TAYLOR.**

### CRIMINAL OFFENSES

3. This request for a criminal complaint and arrest warrant is made in relation to the following offenses occurring in the Eastern District of Virginia and elsewhere:

   Conspiracy to Import Methylone, a Schedule I Controlled Substance in violation of Title 21 U.S.C. §§ 952 and 963.

### EXPERIENCE AND TRAINING OF AFFIANT

4. I am a Special Agent (S/A) for Homeland Security Investigations (HSI) within the United States Department of Homeland Security, and have been so employed since 2009. I am presently assigned to the Hampton Roads Border Enforcement Security Task Force (HR-BEST), a multi-agency collaborative effort designed to identify, disrupt, and dismantle organizations that engage in transnational criminal activity with a primary focus on narcotics smuggling and has been

so employed since May 2009. Prior to being employed with HSI, I was employed as both an Immigration Enforcement Agent and as a Deportation Officer for U.S. Immigration and Customs Enforcement (ICE) for approximately four years. As this affidavit is being submitted only for the limited purpose of obtaining a criminal complaint, I have not included each and every fact known to the investigative team concerning this investigation. Rather, I have set forth only those facts that are believed to be necessary to establish probable cause for the charges stated below.

5. I make this affidavit in support of an application for a criminal complaint for the following individuals: **Keith Allen TAYLOR.**

## FACTS AND CIRUMSTANCES

6. Since March 2012, I have been investigating the suspected importation of 3,4-Methylenedioxy-N-methcathinone (Methylone), a Schedule I controlled substance, into the United States from China by Keith Allen TAYLOR, hereinafter referred to as TAYLOR. TAYLOR was initially identified during the course of another synthetic drug importation investigation conducted by your affiant.

7. On the evening of June 1, 2012, I, along with other members of the Hampton Roads Border Enforcement Security Task Force (HR-BEST) and members of the Portsmouth Police Department's Special Investigation Unit (SIU) conducted a "knock and talk" in the 100 block of Francis Street, Portsmouth, Virginia, the primary residence of TAYLOR. TAYLOR consented to members of the investigative team entering his residence to conduct an interview with him and search his residence for the presence of contraband.

8. In a search of the residence, officers recovered two firearms, eight (8) Suboxone tablets, approximately 14 grams of marijuana, $6,880 in U.S. Currency, a digital scale, and various packaging materials consistent with drug distribution. During the consensual interview of TAYLOR at his residence, TAYLOR admitted to having imported multiple kilograms of Methylone and smaller quantities of 2,5-dimethoxy-4-iodophenethylamine (2C-I) from China.

2

TAYLOR stated he placed between 10 or 11 orders since the summer of 2011, ordering three (3) kilograms of Methylone at a time. His most recent order received from the Chinese laboratory was in April 2012.

9. TAYLOR stated that during the summer of 2011, he sold the Methylone he received from China, on his own, to individuals at various "raves" and nightclubs in the Eastern District of Virginia, but after a short period of time doing this, began to wholesale the imported Methylone to co-conspirator. According to TAYLOR, he would "front" multiple kilograms to the co-conspirator at a time with the agreement that the co-conspirator would re-pay TAYLOR $6,000 per kilogram of Methylone he received.

10. TAYLOR stated that the typical sequence of events to place and receive an order of Methylone was as follows:

   a. The co-conspirator expressed his need for a particular quantity of Methylone to TAYLOR (generally 2-3 kilograms every two to three weeks);

   b. TAYLOR made contact the Chinese laboratory to confirm pricing and availability and placed an order of Methylone via email;

   c. TAYLOR wired funds to the Chinese lab via MoneyGram and sent the MoneyGram confirmation number to the laboratory contact;

   d. The Chinese lab acknowledged receipt of funds via email, shipped the package via EMS Worldwide Express Mail, and transmitted a tracking number to TAYLOR via email;

   e. The package was delivered within one (1) week to TAYLOR at his residence;

   f. TAYLOR received the package of Methylone via the United States Postal Service, unpacked it, discarded outer packing material and notified the co-conspirator that the package had arrived from China; and

   g. The co-conspirator retrieved the package from TAYLOR's residence.

11. The agents of HR-BEST received consent to view and preserve TAYLOR's emails. A review of the emails showed that TAYLOR had placed four orders for Methylone to the lab in China since March 2012:

| Date | Amount | Quantity |
|---|---|---|
| 03/12/12 | $3,500 | 2 kg of Methylone |
| 04/01/12 | $4,400 | 3 kg of Methylone |
| 04/23/12 | $3,100 | 2 kg of Methylone |
| 05/31/12 | $6,000 | 4 kg of Methylone |

12. Moneygram records showed that TAYLOR, through a third party, had wired funds to an individual in China from a check-cashing store and a grocery store on Victory Boulevard on multiple occasions in 2011 and 2012. The funds wired to China were always sent to the same individual at the Chinese laboratory. The last wire was for $1,980 on May 30, 2012, which was for the May 31, 2012 order. TAYLOR admitted that he owed an additional $4,060 on that order for it to be completed by the lab. Records verified that the laboratory contact received each of these payments from TAYLOR at the Bank of China in Suzhou, China.

13. HR-BEST agents also had records of multiple international packages being delivered to TAYLOR from China in the last year.

## CONCLUSION

14. Based on the foregoing, your affiant submits that there is probable cause to believe that Keith Allen TAYLOR did knowingly and intentionally conspire to import into the United States from China or any place outside thereof, 3,4-Methylenedioxy-N-methycathinone (Methylone), a Schedule I controlled substance.

Brian R. Lewis
Special Agent
Homeland Security Investigations

4

Read and Approved:

_____
Amy Cross
Special Assistant United States Attorney


Sworn and subscribed to before me
On this __7__ day of August 2012

_____
United States Magistrate Judge
Norfolk, Virginia